## STATE vs. BEMIS*
### (No. 1317; Jan. 26, 1926; 242 Pac. 802)

APPEAL & ERROR—CRIMINAL LAW—EMBEZZLEMENT—ENDORSEMENT OF
WITNESSES ON INFORMATION—PARTNERSHIP—DEBTOR AND CREDITOR
—VENUE OF CRIME—INSTRUCTIONS—EXCEPTIONS.

1.  Recitals of record *held* to show it to have been filed within
    statutory period.

2.  A record returned to clerk to be corrected might be in-
    dorsed to show filing within statutory period, which was
    erroneously omitted, and fact that record was also in-
    dorsed as filed on day of correction does not effect the
    true filing date nor render the record invalid.

3.  In prosecution of agent, under Comp. St. 1920, § 7134,
    for embezzlement of proceeds of sale of apples, introduc-
    tion of testimony of purchaser of apples before proof of
    corpus delicti was not error, where facts could not well
    be separated.

4.  The order of proof is within the sound discretion of the
    court.

5.  Where defendant moved to have all state's witnesses in-
    dorsed on the information, in view of Comp. St. 1920,
    §§ 7426, 7427, it was not error to permit indorsement
    of another state witness during trial upon a showing by
    prosecuting attorney that he did not previously know of
    such witness, where her testimony could not have sur-
    prised defendant.

6.  Where prosecuting witness purchased and shipped apples
    under agreement that defendant should sell them, and
    proceeds in excess of cost should be divided, there was no
    partnership under Comp. St. 1920, § 4178, and defendant
    retaining proceeds was guilty of embezzlement.

7.  Where prosecuting witness bought, paid for, and owned
    apples, the fact that he shipped them in name of him-
    self and his selling agent does not show a transfer of
    ownership in whole or in part, precluding charge of em-
    bezzlement of proceeds, under Comp. St. 1920, § 7134.

8.  Under Comp. St. 1920, § 7134, that agent's failure to pay
    over money created relationship of debtor and creditor
    does not make embezzlement impossible.

9.  In prosecution for embezzlement, under Comp. St. 1920,
    § 7134, evidence *held* to show that defendant appropriated

proceeds of check to his own use in county of trial, though check was taken in fictitious name.

10. In prosecution for embezzlement, under Comp. St. 1920, § 7134, testimony of witness that he gave check to ''that man over there'' will be assumed from a verdict of guilty to have been understood by jury to refer to defendant.

11. In prosecution for embezzlement, under Comp. St. 1920, ₁§ 7134, uncontradicted evidence *held* sufficient to sustain conviction.

12. Inquiry by prosecuting attorney whether instruction that neglect or refusal of defendant to make a statement should not create any presumption against him was given at request of defendant *held* not improper·or prejudicial, in view of Laws 1925, c. 15.

13. An exception to serve as foundation for error is taken to a ruling or decision of the court, not to conduct of attorneys.

*NOTE—See Headnotes (1) 17 C. J. p. 161 n. 63; (2) 17 C. J. p. 164 n. 67; (3) 16 C. J. p. 865 n. 93; (4) 16 C. J. p. 864 n. 80; (5) 16 C. J. p. 796 n. 55; (6) 20 C. J. p. 417 n. 61; (7) 20 C. J. p. 416 n. 56; (8) 20 C. J. p. 422 n. 91; (9) 16 C. J. p. 767 n. 87; (10) 17 C. J. p. 222 n. 32; (11) 20 C. J. p. 486 n. 60; (12) 17 C. J. p. 301 n. 54; (13) 17 C. J. p. 79 n. 73.

APPEAL from District Court, Natrona County; BRYANT S. CROMER, Judge.

E. C. Bemis was convicted of embezzlement, and he appeals.

*Vincent Mulvaney* and *Edwin Barrett* for appellant.

The prosecution did not prove that a crime had been committed; 16 C. J. 529; names of all state witnesses were not endorsed on the information in compliance with the court's order; 7427 C. S.; Boulter vs. State, 6 Wyo. 77; the court erred in overruling appellant's motion for directed verdict; it being shown that the prosecuting witness and defendant were partners; 20 C. J. 445; 9 R. C. L. 1281; 4177 C. S.; 20 R. C. L. 824-836; State vs. Kent (Minn.), 21 Am. Rep. 764; the court erred in overruling appellant's motion for judgment notwithstanding the ver-

dict and in arrest of judgment. There was no evidence of a commission of an offense in Natrona County, and therefore the verdict is not sustained by evidence; the verdict was contrary to the evidence since but $950.00 was involved and appellant was convicted of embezzling $1075.00.

*David J. Howell,* Attorney General, and *John C. Pickett,* Assistant Attorney General, for respondent.

The record on appeal was not filed with the District Court and should be stricken from the files; 6406 C. S.; the clerk's certificate did not include the appeal record; it was returned to the clerk for certification and refiled in the Supreme Court out of time, thus preventing jurisdiction on appeal; 6404 C. S.; Coffee vs. Harris, 27 Wyo. 494; appellant's motion to strike testimony of respondent's witness Huber was properly denied; 16 C. J. 864; endorsement of name of Mrs. Paul Huber after the trial commenced was not error; 7427 C. S.; defendant was not a partner of the prosecuting witness, but a mere agent; 4177-78 C. S.; Holgate vs. Downer, 8 Wyo. 334; an agent working on commission is guilty of embezzlement if he appropriates funds of principal in excess of his commission; 20 C. J. 444; Kentucky vs. Jacobs, 104 S. W. 345, 13 L. R. A. 511, and cases in note. The goods were shipped to Casper and there disposed of by defendant; the evidence showed embezzlement committed in Natrona County. Defendant's motion for directed verdict was properly denied. Defendant was charged with embezzling $1075.00, being $950.00 proceeds from sale of apples and $125.00 advanced to pay freight. The record on appeal is not prepared in accordance with law, nor filed within the time. No misconduct on the part of the prosecuting attorney was shown.

POTTER, Chief Justice.

The case is here on direct appeal for the review of a judgment upon appellant's conviction of the crime of embezzlement. A motion to strike the record from the files and dismiss the appeal was filed by the attorney general on June 30, 1925, the record on appeal having been filed with the clerk of this court on June 3. The grounds of the motion were that this court is without jurisdiction for the reasons: 1. That the record was not perfected and filed in the district court within the time required by law. 2. That the transcript of the testimony was not filed with the clerk of the district court as required by the statute. 3. That the record does not contain a certificate of the clerk of the district court showing the same to be true and correct, as required by statute.

On July 7, 1925, a motion was filed by the appellant that the record be returned to the district court for proper authentication in accordance with the records now on file in the office of the clerk of said court. Pending that motion, a stipulation was entered into between counsel consenting that the record be returned to the district court for amendment to conform to the objection raised in respondent's motion to strike and dismiss, "it appearing that the said information can be supplied from the data available in the office of the clerk of the district court." It was provided, however, in said stipulation, that such amendment should be without prejudice to respondent's motion, and that said motion may be considered when the case is presented on its merits. On August 24, an order was entered pursuant to the stipulation directing that the record be returned to the clerk of the district court for the purpose of showing the date of its filing in said court and for the attachment thereto of a proper clerk's certificate, but with the proviso that the said correction shall not in any way affect the rights of the respondent. The cause was thereafter submitted upon

the merits and also upon the motion. And the first matter to be considered is whether the motion should be sustained, notwithstanding that upon the return of the record it was corrected by the clerk's endorsement thereon of the date of its filing in the office of the clerk of the district court, which was well within the time provided by statute for the preparation and such filing of the record, and the addition thereto of an authentication certificate in due form, and then re-filed in this court. We think that the motion should be denied.

The record contained ample recitals to show that it had in fact been received by the clerk of the district court for filing on or before May 1, 1925. The transcript of the testimony is endorsed as filed on that date, and bore the reporter's certificate required by law, dated April 13, 1925, and that was shown to have been subscribed and sworn to before the clerk of the district court on that date, and contained also the clerk's certificate dated April 23, 1925, authenticating as correct the instructions, bench warrant, and journal entries, including the judgment, embraced within the record, and a final certificate dated May 1, 1925, stating that it contained all of the original papers filed in the case and a true and correct copy of all journal entries, and then describing each of the said original papers, as for example, "The Information, The Bench Warrant, The Demurrer, The Verdict," etc., and the seal of the court was attached thereto. Because that certificate was deemed by counsel to be incorrect and insufficient in form, in not stating in the statutory words that the "record is true and correct," the record was returned for correction in that respect. But the original certificate, having been dated May 1, 1925, indicated, clearly enough, that the record was in the clerk's office for filing on that date; and that it was then the clerk's duty to endorse it as filed on that date. The record, as it came to this court, contained specifications of error endorsed as filed

on April 30, 1925, which, under the statute, are not required to be filed until within ten days after the record on appeal is prepared and filed.

The fact that after the endorsement of the true date of filing, which had been omitted, May 1, 1925, and the correction of the certificate so as to make it strictly conform to the requirements of the statute, the clerk again endorsed it as filed on August 25, and that the corrected certificate was dated August 26, 1925, should not be held, we think, to overcome the effect of the filing endorsement of May 1, or as rendering the same invalid. That later date of filing is to be taken as the filing *after correction*. The new and corrected certificate, though dated August 25, contains the statement that the record was filed in the clerk's office on May 1, 1925. The record having been prepared by the clerk within proper time, and in the clerk's office for filing, as shown by the record facts aforesaid, we see no reason why it might not thereafter, upon due return to the clerk's office, be endorsed as filed on the date when it should have been so endorsed, and the certificate corrected to comply in form specifically with the requirements of the statute. Clearly the appellant was not at fault in either of those respects. The record was there, concededly containing all of the necessary material, the only defect being the clerk's omitting to endorse thereon the date of filing and omitting to state specifically in her authentication certificate that "the record is true and correct." The motion will, therefore, be denied.

The charge contained in the information is that on January 25, 1925, in the county of Natrona, in this state, the defendant, being then and there the agent and employee of A. J. Brainard, for the sale of one carload of apples, then and there belonging to said Brainard, and to the possession of which the said Brainard was then and there entitled, did then and there receive and take into

his possession from the sale of said carload of apples, by virtue of his said employment, and while so then and there employed as aforesaid, the following property, to-wit: "Lawful money of the United States in the sum of $1075.00, to the possesison and ownership of which the said A. J. Brainard was then and there lawfully entitled and did then and there feloniously, unlawfully, and fraudulently take, purloin, secrete and appropriate to his own use the money aforesaid" contrary to the form of the statute in such case made and provided, etc. The statute provisions upon which the prosecution was based are found in section 7134, Compiled Statutes 1920, reading as follows:

"Every officer, agent, attorney, clerk, servant or employee of any person who, having access to, control or possession of any money, article or thing of value, to the possession of which his or her employer is entitled, shall, while in such employment, take, purloin, secrete, or in any way whatever appropriate to his own use, or to the use of others, any money, coin, bills, notes, credits, choses in action, or other property or article of value, belonging to or deposited with, or held by such person, in whose employ said officer, agent, attorney, clerk, servant or employee may be, shall be deemed guilty of embezzlement and shall be imprisoned in the penitentiary not more than fourteen years."

Before taking up the errors specified as grounds for reversal, the main facts may be stated briefly as follows: The defendant was in Casper, in possession of a carload of apples, which had been shipped to that point from Idaho to be sold by the defendant pursuant to a pencil memorandum of agreement signed by said A. J. Brainard and the defendant, reading as follows:

"Coeur d'Alene, Idaho,
Nov. 7, 1924.

This is to certify that A. J. Brainard and E. C. Bemis have agreed to ship one car of apples consisting of 640 boxes under the following agreement:

Apples to be sold for cash.

That E. C. Bemis shall remit to A. J. Brainard the cost price of 640 boxes of apples as soon as sold.

That A. J. Brainard and E. C. Bemis agree to divide the moneys less the cost price equally.

(Signed)    A. J. Brainard.
E. C. Bemis."

Mr. Brainard testified that he lived at Coeur d'Alene, Idaho, where he had lived about fifteen years, and was engaged in truck growing, but at that time fruit growing, and that in October, 1924, he became acquainted with the defendant on the ranch of the witness, the defendant then being in his employ, under a contract for sawing some cordwood into shorter lengths, who told him that there was a fair market for apples at Lavoye, Wyoming, and there could be some good money made on a carload of apples if shipped there. That he then told the defendant if he thought they could make some money on a carload of apples, he was willing to furnish the money to buy the apples and ship them, which he did. He then identified and there was introduced the paper containing the above agreement. He further testified that the agreement was made on January 8th or the evening of the 7th of January, 1925, instead of in November, the witness expressly stating that he was unable to explain how the date of November came to be there. That difference in dates is not material, for both parties rely upon the agreement and no question was made as to the proper date. He testified also that the apples were shipped on the 8th of January, from a point in Idaho where they were purchased by said Brainard, as from Brainard and Bemis

to Brainard and Bemis at Casper, with the understanding that they should be shipped from Casper to Lavoye, the estimated expense of which, $125, was advanced by Brainard to Bemis.  And the bill of lading is in the evidence and shows on its face a shipment from Brainard & Bemis at H. S. Farms, Idaho, to Brainard & Bemis as "consignee" and Casper, Wyoming, as "destination," and that it was signed by and in the name of A. J. Brainard as "shipper."  There is no doubt, under the evidence, that the apples were bought and paid for in Idaho by Brainard and that they belonged to him, and that the arrangement was that Bemis was to have nothing for his services except the agreed division of profits, if any, over and above the cost price, including the freight charges.  Brainard testified that he made the shipment and had the bills of lading, which were introduced in evidence, in his possession, and that they were shipped to Brainard and Bemis in order to guard against any difficulty in the matter of identification or authority of Bemis to receive and handle the apples at destination.  With reference to the advance of $125, he testified on direct examination that he, Bemis, "told me that there was a railroad running from Casper to Lavoye, and that we would have to pay local freight from Casper to Lavoye.  I had our freight agent figure up about how much it would be.  Bemis told me that it was thirty miles from Casper to Lavoye, and our freight agent figured up that it would be anywhere from $80 to $100 and I told Bemis 'I will give you $125 in cash so that you will be sure and have enough to pay the freight.  I don't want you to get down there and be short of money and get into any trouble there.' "

And he testified that the whole amount of money that he paid out for the purchase of the apples and their shipment was $1025 in cash, including the advance of $125 to Bemis for freight between Casper and Lavoye, and that

none of it had been paid over to him. He was cross-examined with reference to the transaction as follows:

"Q. Now, Mr. Brainard, in the event that there were no profits on this deal of apples, what was Mr. Bemis to receive for his services? A. He wasn't to receive anything. Q. Then he was to share in the loss, as well as the profit? A. No, I was to stand the loss. I knew Bemis didn't have anything to lose— Q. He wouldn't get anything if there was no profit,—what was his time for—how was he paid for his time? A. He wasn't to have any pay unless he made a profit on the apples, that is where he was to get his money. Q. Was Bemis with you when the apples were bought? A. Yes, I bought them. I just took him along to the buyers. Q. I understand, he was to look for his share from the profits for his services in taking care of the shipment, also for his payment, as I understood it? A. He wasn't to get anything unless he sold them at a profit. Q. How did you ship them? A. In a refrigerator freight. Q. You shipped them in the name of Brainard and Bemis? A. Yes. Q. Why did you ship them that way if it wasn't a partnership? A. I did that for fear the car might go wrong, something would happen on account of inspection. A carload of apples can be held up by any fruit inspector, either state or railroad fruit inspector, the car can be held up if you haven't somebody there that has some authority. Take any carload of apples might stand on a sidetrack and be detained until they can get in touch with you and find out what you want to with it, so in order to eliminate anything that might happen I signed it Brainard and Bemis. Q. Wasn't Bemis as capable of looking after it as you were? A. I signed it—No, sir. Q. Did you make any other shipment but this one shipment? A. No. Q. Isn't it a fact it is sometimes referred to in this locality that you and he are partners? A. No, sir.  *  *  *  Q. Have you anything to show what you paid for those apples?

A. Yes, sir. Q. Where is that? Here? A. I have all the cancelled checks for those. Q. You stated you paid for them the sum of $1025.00—I believe you stated on direct examination you paid $1025.00 for these apples? A. No, sir, that is the amount of money I paid. I paid out $1025.00.''

It appears that Bemis sold the apples to Mr. Paul Huber at Casper without taking them to Lavoye, and for the sum of $950, for which a check was given to Bemis by Mrs. Huber, and the evidence shows that the check was made out payable to W. E. Sutherland, Bemis representing that to be his name, and that he cashed the check at a bank in Casper, as testified to by one of the tellers of said bank, all of which is undisputed. Mr. Bemis did not testify, nor was any affirmative evidence introduced on his behalf with reference to the shipment or sale of the apples, except the identification of defendant's copy of the written agreement by Brainard upon his cross-examination, and, as so identified, it is in the record here.

It is urged that the court erred in overruling appellant's motion to strike all of the testimony of the witness Paul Huber. He was called as the first witness, and testified to the fact of his purchase of the car of apples from the defendant at Casper and the terms thereof. At the conclusion of his testimony counsel for defendant moved to strike all of it for the reason that the corpus delicti of the crime had not been proven, and relies here, in support of that alleged error, upon the principle that it is preferable to prove the corpus delicti before any evidence is offered to implicate the defendant. See 16 C. J. 865. It is said in the cited paragraph that the matter is largely within the discretion of the court, and that while the state should prove the corpus delicti first it has been held not error to receive evidence against the accused before such proof, particularly where it is received on the condition that the corpus delicti shall afterwards be proved, ''or

where the body of the offense is so intimately connected
with the question as to who committed it that they cannot
be separated.'' And these quoted words seem to apply
to the case in hand. It was necessary to show agency,
possession or control of the apples and the sale money by
the agent, and the appropriation thereof by him, to prove
the crime, and that would prove also that the defendant
committed it. These acts or facts could not well be sep-
arated so as to establish a clear preference as between
them in the order of proof. Richey v. State, 28 Wyo. 117,
201 Pac. 154; Dalzell v. State, 7 Wyo. 450, 53 Pac. 297.

The motion appears to have been overruled upon the
ground that the order of proof is within the sound discre-
tion of the court. That is the usual rule. 16 C. J. 864; 4
Wigmore on Ev., 2nd Ed., Secs. 1867, 2073. And that
would be sufficient in this case to sustain the court's rul-
ing. But, as above indicated, we think it might be diffi-
cult to distinguish between the testimony showing the
sale of the car of apples and the receiving the money there-
for, and the testimony showing delivery of the apples to
the defendant and the agreement under which they were
delivered, so as to render the testimony showing delivery
to defendant and the arrangement for their sale by him
to be the act or acts constituting alone the corpus delicti.
Technically, perhaps, it might be said that the retention
of the money constituted chiefly the corpus delicti—''the
body of the crime.'' 14 C. J. 1425. ''The substantial fact
that a crime has been committed by some one.'' Rapalje
& Lawrence's L. Dict. But this could hardly be shown
under this charge of embezzlement until, or in connection
with, a showing of the sale for money.

It is next contended that the court erred in overruling
appellant's objection to the endorsement of the name of
Mrs. Paul Huber on the information as a witness. At the
commencement of the trial counsel for appellant moved
that the names of all the witnesses be endorsed on the

information, and it was so ordered. Mrs. Huber's name was not then endorsed thereon. It is stated in appellant's brief that the state knew, or could with reasonable diligence have known, of the necessity of calling Mrs. Huber as a witness. But the record shows these facts: Following the testimony of Mr. Huber and Mr. Brainard, the assistant prosecuting attorney then representing the state addressed the court, requesting that the name of Mrs. Paul Huber be endorsed on the information, stating: "I didn't know that she was a witness." Counsel for defendant objected. Said counsel for the state then stated that at the time of endorsing the names of the witnesses upon the information, upon the motion of the defendant, the county attorney did not know that Mrs. Huber would be a necessary witness, for it was his impression that the check given in payment for the apples was handled by Mr. Huber and not by Mrs. Huber, and that the sole purpose of the latter's testimony would be to prove that she handed defendant the check. Exception was taken to that statement on the ground that it failed to show that the necessity of the testimony could not have been foreseen with reasonable diligence. The court overruled the objection, and permitted the endorsement. The witness was then called and testified to the delivery of the check in question to Mr. Bemis, the defendant, and the time thereof.

The statute controlling this matter provides, quoting from Sections 7426 and 7427, Wyoming Compiled Statutes 1920:

"§ 7426. Information may be filed during term time or in vacation in any court having jurisdiction of the offense, crime or misdemeanor specified therein, by the county and prosecuting attorney of the proper county, as informant. He shall subscribe his name thereto, and endorse thereon the names of the witnesses known to him at the time of filing the same. He shall also endorse there-

on the names of such witnesses as may thereafter become
known to him at such times before the trial as the court
may rule or otherwise prescribe.  All informations shall
be verified by the oath of the county and prosecuting at-
torney, the complainant, the prosecuting witness, or some
other person.  The name of the prosecuting witness, as
such, shall always be endorsed on the information.''

"§ 7427.  The failure to endorse the name of the pros-
ecuting witness, or the names of other witnesses, shall not
be ground for the quashing or setting aside of the infor-
mation and unless the defendant or his counsel, shall move
or request that such endorsement shall be made, if not al-
ready made, the defendant shall be deemed to have waived
his right to have such endorsement made, and such en-
dorsement may be made before, at or after any trial.''

These provisions were introduced into our statutes by
Chapter 59 of the Laws of 1890-91, the first session of the
legislature after Wyoming's admission as a state; that
chapter containing the act providing for the first time in
this jurisdiction for prosecution in criminal cases by infor-
mation and the procedure thereunder, and were thereafter
included in an amendatory statute enacted in 1895 (Ch.
123, L. 1895).  They were considered in Boulter v. State,
6 Wyo. 66, 42 Pac. 606, but the question as presented in
that case was not decided because found to be unnecessary.
The court, however, stated that the second of the above
quoted sections, to the effect that the matter of endorsing
the names of witnesses upon the information may be
waived, and that the endorsement may be made at or after
the trial, was an innovation in such legislation so far as
the court's investigation then disclosed, and that such a
provision did not appear in any other statute coming
under the court's observation.  And the court, referring
to the provision that the endorsement may be made before,
at or after the trial, said:

"These qualifying provisions, it is contended, neutralize the mandatory language of the provisions requiring the indorsement, and are a legislative construction that the matter of indorsement of the names of the witnesses is directory instead of mandatory. Indeed it has been held in a number of the States, where such a provision exists as to indictments, requiring the indictment to be indorsed with the names of the witnesses, that such requirement is merely directory. * * * A statute of this State, yet in existence, requires that, in cases of misdemeanor, the name of the prosecuting or other witness shall be indorsed on the indictment, and this was held to be in an early case merely directory, and not mandatory * * * Some courts hold under a statute similar to ours in requiring the indorsement of the names of the witnesses for the prosecution on the information or indictment, that the matter is within the sound discretion of the trial court. * * * The rule holding that the matter of indorsement is a substantial right to the defendant is rigidly upheld in other states, founded on the wording of the statute like Section 2 of our statute, quoted supra, but where the qualifying restrictions of Section 3 of our statute have not been incorporated in the law."

The above references to sections 2 and 3 of our statute were to the original act, the provisions of which are now found respectively in Sections 7426 and 7427, C. S. 1920. The court said in that case also that said Section 2 of our statute was borrowed from the statute of Michigan, the first jurisdiction to adopt the information system. It may be said here, however, that the Michigan statute, and as incorporated into the statutes of other states subsequently adopting the procedure, contained a word not in our statute, but seeming to have been inadvertently omitted, viz: the word "by" between the words "court" and "rule" in the sentence permitting the endorsement of the names of witnesses thereafter becoming known to the prosecuting

attorney; the Michigan statute providing in that respect that the prosecutor shall endorse thereon the names of such witnesses thereafter becoming known to him at such times before the trial as the court "may by rule or otherwise prescribe." Our statute omits the word "by" so that it reads "as the court may rule or otherwise prescribe." The said omission may not, however, change the meaning or effect of the provision. But we think said section of our statute is to be construed substantially as in Michigan and in other states having the Michigan statute; cases from which we shall cite. It was held in Michigan, Hill v. People, 26 Mich. 496, that it was not error to permit a witness whose name had not been endorsed to be sworn on behalf of the people upon a showing by the prosecuting attorney that he did not know that the person called was a material witness before the trial commenced, or until the very time of calling him to the stand. The court said:

"The common law did not require the names of any of the witnesses to be endorsed upon the indictment for any purpose connected with the trial, but as the witnesses who were to testify for the grand jury, were sworn in open court before they were sent before the grand jury, a list of the witnesses intended to be examined before that jury, was required to be indorsed on the back of the bill, as drawn up to be laid before them. This was required for two purposes; *First,* that the officer whose duty it was to swear the witness might know who were to be called and sworn, and that he might certify thereto, which he did, by adding after their names, 'Sworn in court;' and *second,* that the grand jury might know what witnesses to call and who had been sworn. * * * By the act 'to provide for the trial of offenses upon information' it is provided * * *: *First,* that the prosecuting attorney shall subscribe his name to the information and endorse thereon the names of the witnesses known to him at the time of filing of the same; and *second,* at such time before the trial of any case

as the court may, by rule or otherwise, prescribe, he shall also endorse thereon the names of such other witnesses as shall then be known to him. This second requirement * * * does not by its terms, nor by any reasonable implication, extend to any witness not known to him previous to the commencement of the trial; but, considered with reference to the common law, and the nature of the subject, involves a clear implication that it was not intended to apply to any witness *first discovered by the prosecution to be material, after the commencement of the trial.* While there are some good reasons to require the endorsement of the names of such witnesses as are known to the prosecuting attorney prior to the commencement of the trial, and which he then expected to have sworn, we can discover no reason founded on justice or common sense, for requiring the endorsement of such as the prosecutor, during the progress of the trial, shall happen to discover to be important witnesses or for the exclusion of such witnesses upon such grounds. And we think it would be exceedingly pernicious in the administration of criminal law, to recognize such an objection. * * * This would be a new feature in the administration of the criminal law, which no court ought ever to adopt without the express requirement of the legislature, and which we cannot suppose any intelligent legislature will be likely to adopt, with any reference to an honest administration of justice."

In a later case, People v. Hall, 48 Mich. 482, 12 N. W. 665, 42 Am. Rep. 477, it was held to have been error for the court to allow names of witnesses to be added during the trial, over objection, "without any showing that they were not known earlier and in time to give defendant notice in season to anticipate their presence before the trial," the court stating that the statute is explicit that "this shall be done before trial where witnesses are known." In the case at bar, the court was informed that the necessity for

calling the person whose name had not been endorsed was not known previous to the time when she was called, and, under the aforesaid Michigan rule, that rendered the late endorsement proper, or at least the examination of the witness.

In Kansas, under a statute like that in Michigan, without including the provisions of the second section of our statute aforesaid (Sec. 7427), it was held in an early day to be within the court's discretion to permit the name of a witness though known to the prosecuting attorney when filing the information, to be endorsed thereon after the commencement of the trial, and to permit such witness to testify on the part of the state, over defendant's objection. State v. Cook, 30 Kan. 82, 1 Pac. 32; State v. Dickson, 6 Kan. 209; State v. Medlicott, 9 Kan. 257; State v. Price, 40 Pac. 1000; State v. Atteberry, 232 Pac. 1020. And that is the rule also in Idaho, under a statute like that in Kansas and Michigan, upon proper showing by the prosecuting attorney of a previous lack of knowledge for the necessity of the witness. State v. Silva, 21 Ida. 247, 120 Pac. 835; State v. Crea, 10 Ida. 88, 76 Pac. 1013; State v. Barber, 13 Ida. 65, 88 Pac. 418. Since this point has not heretofore been directly decided by this court, although no doubt the opinion in Boulter v. State has been taken as recognizing the propriety of the liberal rule, we quote from the Kansas decision in State v. Cook, supra, explaining the reasons for the rule there adopted and the conditions of its application. The court said:

"While the names of the witnesses upon the information will inform a defendant by whom it is expected the charge therein set forth is to be sustained, and thus enable him, to some extent, to prepare for his defense, and while it is the duty of the prosecuting attorney to endorse upon such information the names of the witnesses known to him at the time of the filing of the same, and expected to be used upon the trial, yet the court, in the furtherance

of justice, within its discretion, ought to have the power, and, in our opinion, does have the power, to permit the name of any witness to be endorsed upon the information at any time, even after the trial has actually commenced. Said Section 67 is not a condition to the qualification of a witness. As a general rule, the court should allow the names of the witnesses of the state to be endorsed upon the information after the commencement of the trial, if it be important so to do; but, of course, if the defendant is taken by surprise thereby, the court should extend to him all possible facilities for a fair, full and impartial trial, and if'necessary, may delay or even continue the hearing of the case until he has ample opportunity to prepare to meet the evidence of the witness endorsed upon the information after the commencement of the trial. The prosecution ought not to be defeated simply because the county attorney does not endorse the names of the witnesses at the time of the filing of the information, and before the trial; for often, during the progress of the trial, a necessity arises for the introduction of evidence which could not have been anticipated on the part of the prosecution before the commencement thereof. If the court shall be convinced that the county attorney had purposely failed to endorse on the information the names of the witnesses known to him at the time of filing the same, to render it difficult for the defendant to prepare his defense, the court may, under such circumstances, within its discretion, refuse to grant the request of the county attorney to endorse on the information the names of the additional witnesses; but in all cases where the request to endorse is made in good faith, and to promote justice, the court has the authority to grant the same, keeping in view the just administration of the criminal laws, and the right of the defendant for a reasonable time to prepare to meet unexpected evidence.''

The question was before the Supreme Court of South Dakota in State v. King, 9 S. D. 528, 70 N. W. 1046, the statute following that of Michigan and Kansas, and substantially the same as the provisions found in our Section 7426. The court said:

"This provision should not be permitted to defeat the ends of justice. * * * Fairly construed, the section requires the names of all witnesses known to the state's attorney to be endorsed before the trial begins; but it does not preclude the government from calling witnesses whose names are not on the information. It is the state's attorney's duty, when the information is filed, to indorse the names then known, and before trial to add all then known; but he can add names only under a general rule or special order of court. Names should not be added after the trial begins, because, if they were previously known, they should have been previously endorsed, and, if not, it is unnecessary. Persons whose names should have been, but which are not, endorsed, cannot testify; all others can. * * * When any witness is objected to because his name is not endorsed on the information, the objector should show that he was known to the state's attorney before the trial began. In the absence of any showing to that effect, the objection should be overruled. The court below did not err in allowing witnesses to testify whose names were not on the information." (Citing the Michigan cases of Hill v. People and People v. Hall, supra, and People v. Moran, 48 Mich. 639, which holds that the endorsement upon an information after going to trial of names of additional witnesses is ground for a new trial if done without leave of court.) See also State v. Matejousky, 22 S. D. 30, 115 N. W. 96; State v. Fulwider, 28 S. D. 622, 134 N. W. 807; State v. Cherrington, 34 S. D. 562, 149 N. W. 421. It was stated in the opinion in the last case cited that several witnesses were sworn and gave testimony on behalf of the state whose

names were not endorsed on the information; that at the time they were called to testify, defendant objected and duly excepted on the ground that their names were not endorsed on the information, but that the state's attorney at such times stated that he did not know of such witnesses at the time of the filing of the information, and the court stated its conclusion to be that no error was committed in permitting such witnesses to testify for the reasons stated in its previous decisions above cited.

In addition to the statute considered in the cases above referred to on this question, we have the additional provision in our Section 7427 that such endorsements may be made "before, at, or after any trial," following another additional provision that the defendant shall be deemed to have waived his right to have such endorsements made unless he shall move or request the making thereof. And we are of the opinion that the express permission granted for the making of such endorsements "at, or after any trial" should not be restricted by interpretation so as to have no greater effect than the provision found in Section 7426, but should be construed as conferring express authority for such further endorsements, at least by permission of the court. It seems to be the view of counsel for appellant that having made the motion at the commencement of the trial, and that pursuant thereto the names of witnesses were then endorsed upon the information, the provision for endorsing further names at or after trial was thereby in some way superseded or abrogated. We cannot agree with that view, for we think it does not represent the proper interpretation of the words of the statute, in connection with the previous provisions. Assuming that during or after the trial permission should be obtained from the court to make such endorsements, and we think that ought to be the rule, the court should take into consideration the several circumstances in order to determine whether or not the prosecuting attorney has been fair in the matter, and whether or not any consideration

is due the defendant because of surprise on his part. But
we see nothing in the facts in this case to show that the
defendant could have been surprised, in a legal sense, or
at all prejudiced by the later endorsement of Mrs. Haber's
name as a witness. He might certainly have expected that
the prosecution would show the check delivered to him in
payment for the apples, and have been prepared to meet
the proof of that fact, in case of any possible explanation
thereof in his favor.

The next point taken up in the brief is said to involve
the most important assignment of error, viz: That the
court erred in overruling appellant's motion for a directed
verdict. The argument in support thereof is that if appel-
lant was a partner of Brainard, or, as his agent, had an in-
terest in the proceeds, or if the relation of debtor and
creditor then existed between them, there could be no em-
bezzlement. And authorities are cited, including Section
4178, Wyo. C. S. 1920, defining a partnership, to show
that the defendant was first, a partner or, second, that he
had such an interest in the proceeds that his retention of
the money could not have been embezzlement, or third,
that there was such a relation of debtor and creditor as
would defeat the charge. But we think that neither of
these points is sustained by the facts.

The written agreement did not show a partnership. It
did not provide for a participation in or division of the
losses, nor for a participation in or division of profits in
the sense of such a participation or division between part-
ners. There was certainly no joint ownership of prop-
erty. The apples all belonged to Brainard. The defend-
ant was required by the agreement to remit the entire cost
price to Brainard, and his duty was to remit also the $125
advanced for freight to Lavoye, which was not expended
for any purpose under the agreement. And what defend-
ant received upon the sale of the apples did not, it appears,
cover the cost price. 30 Cyc. 370-372, 376, 380. It is said

on page 380 of the work cited that ordinarily partners share losses as well as profits, and it has been decided in a number of cases that to constitute a partnership *inter sese* there must be a community of losses as well as of profits. On page 381, it is said that agreements between partners that they shall share the losses but not the profits are made occasionally, but an arrangement of that kind between business associates generally indicates that they are not partners. On page 372 it is said that when the business is limited to a single venture, pretty clear evidence of an intent on the part of all associates to create the partnership relation is required. If the parties have not expressly provided for a partnership, it becomes important to inquire whether they have contributed to a common fund with which the transaction is carried forward; and there is clearly no ground for holding a partnership to exist between persons who jointly undertake to sell a piece of land and to divide the excess over the price the owner has agreed to take. On page 376 it is said that a contract for the remuneration of an agent by a share of the profits does not in itself make the agent a partner in the business, for in that case there is no community of interest in the capital stock; the agent does not act as, and is not a principal trader; he is not clothed with the usual powers, rights or duties of a partner, but is subject to the orders of the owner of the business, and he has nothing to do with the losses except as they affect the amount of his remuneration. In the section of our statute cited in the brief, Sec. 4178, it is provided that the receipt by a person of a share of the profits of a business is no ground for inference that he is a partner "if such profits were received in payment as wages of an employe." We cannot agree with the contention that the evidence shows that defendant and the prosecuting witness were to share in the proceeds of an enterprise. It is very clear that they were not to share in "proceeds" regarded merely as such. The

greater part of the expected proceeds were not to be considered at all in any division but were to be remitted to Brainard.

The fact that the shipment was made in the name of Brainard and Bemis is not at all controlling, in view of the explanation by Brainard of the reason for doing that, which is undisputed. Certainly, he could not be held to have transferred an interest in the carload of apples or their proceeds merely because of billing them as from Brainard & Bemis from a shipping point in Idaho to Brainard & Bemis at the destination in Wyoming. In view of the undisputed testimony that Brainard bought and paid for and actually owned all of the apples, the mere fact of that method of shipping them would not show a transfer of ownership in whole or in part. That circumstance must be considered in connection with the whole transaction and the agreement under which the parties were acting.

The fact that the relation of debtor and creditor may have existed between the parties through defendant's failure to pay over the proceeds of the sale or the money advanced for freight, which was not used for any such purpose, does not make it impossible for the crime of embezzlement to have been committed. The statute defining the crime is intended to punish the act of any agent, clerk, officer or employee who shall have appropriated to his own use, or to the use of others, any money, or evidence of indebtedness or property mentioned in the statute, belonging to the principal or employer, notwithstanding the fact that an indebtedness may have been created by such unlawful act. The fact of the existence of the relation of debtor and creditor could be relevant, upon a charge of embezzlement under such statute, *only* when the alleged agency or trust relation is not proven to have existed. And that is shown by the authority cited in appellant's brief, 9 R. C. L. 1274, from which the following is quoted in the brief:

"When the dealings between two persons create a relation of debtor and creditor, *and not one of the trust relations enumerated in the statute* (italics ours), the money is not held by virtue of a trust relationship, and the offense of embezzlement is not committed by a failure to pay it over."

It is contended that the court erred in overruling a motion in arrest of judgment. The argument is that the court was without jurisdiction for the reason that the evidence does not disclose that the crime, if any, was committed in Natrona County. We cannot agree with that conclusion of counsel. The precise point they seem to make is that since the check given to defendant was payable to the order of W. E. Sutherland, upon the back of which appeared an endorsement of that name, that the testimony of Mrs. Huber did not show what value was received for the check, or that it had any connection with the car load of apples, and that the bank teller did not see the defendant endorse the check, it might rightfully be presumed that the money received by the defendant was on the account of the payee Sutherland. Wherefore, as said in the brief, there being no appropriation to defendant's use, or evidence that he received the money for his *own account,* in said County or elsewhere, the question of venue was not proven. But it was very clearly shown by the evidence of Mr. and Mrs. Huber taken together, that the check was given to the defendant in payment for the carload of apples; that he represented to Huber that his name was W. E. Sutherland, and for that reason that the check was made payable to that name, but delivered to the defendant as the supposed possessor of it, and the supposed owner of the apples. The evidence most clearly shows that he sold the apples, received the check in payment therefor, and cashed the check at the bank, receiving the money thereon, all in Natrona County, in this state. We cannot see the slightest ground for holding or for the

jury to have found that the defendant did not appropriate the money to his own use. A fact not previously referred to may be here stated, seeming to explain the use by the defendant of the name of Sutherland. The witness Paul Huber testified that a majority of the boxes of apples were marked very plainly "Sutherland—Grown by Sutherland;" that he asked the defendant if that was his name and the defendant said "yes." And the witness Brainard testified that there were 330 boxes in the car marked W. E. Sutherland; that said Sutherland was his, Brainards, neighbor in Idaho.

Another item of evidence that has not been mentioned, which we think has a bearing upon the question of the guilt of the defendant, in view of the fact that the cost price of the apples and their shipment as testified to by Brainard, was $1025, is found also in the testimony of the witness Paul Huber, the purchaser of the apples. He testified that he asked the defendant what kind of apples they were, and was told how many boxes and how many different varieties, and that they were all extra fancy. That he did not remember what defendant wanted for them, except that he had a price on each variety, and after he, the witness, had finished investigating the apples, he made him an offer of something in the neighborhood of $1200. That the defendant tried to get him to accept the apples in the car, offering him a discount, which, the witness says, he thinks was $50. That the next morning, as the witness began to get the apples, and opened them, they did not seem to him to be the same as the samples which had been shown him, and he told the defendant then that some adjustment would have to be made if he wanted him to take the apples. That when they were all unloaded, it appeared that those later examined were better than the first, and he then told the defendant that he would give him so much for each grade or kind, which amounted altogether to $950; and that the defendant accepted that amount. It may be said also in connection with the previ-

ous point that he testified that he then sent the defendant to Mrs. Huber at the "jewelry store" to be paid, and that Mrs. Huber paid him there.

Discussing the specification of error that the verdict is not sustained by sufficient evidence and is contrary to law, the argument is again presented that there is no connection shown between the check given to the defendant and the testimony of Mr. Huber relating to the carload of apples. The fact is referred to that the teller said that he gave the check to "that man over there." The court and the jury must have seen and understood what was meant by that. There is nothing else in the testimony to indicate to this court that said witness pointed to anyone other than the defendant. We must assume from the verdict of the jury that they understood the designation of the party to whom the money was paid upon the check by those words and no doubt by some gesture of the witness, and that he intended to and did refer to the defendant. Certainly there is nothing in the evidence to justify this court in holding that there was no evidence to support the finding upon that matter. And upon the whole case presented to the court and jury upon the trial by uncontradicted evidence it is impossible, we think, for this court to hold, with any reason, that the verdict is not sustained by sufficient evidence. The question as to whether or not it is contrary to law has already been sufficiently discussed.

It is necessary to consider one other point before finally disposing of the case. One of the specifications of error is misconduct on the part of counsel for the prosecution in asking in the presence of the jury if a certain instruction was given at the request of the defendant. That instruction was that the neglect or refusal of the defendant to make a statement shall not create any presumption against him. The record shows that the jury were regularly instructed, following which the cause was argued to the jury as required by our practice, and that after the argu-

ment was concluded on both sides the court addressed the jury as follows:

"Gentlemen of the jury, in trying to expedite matters and get the case into your hands, it comes to the court's notice that a proper instruction as requested was not given but was omitted from the rest of those instructions that were given. I will now read you an additional instruction which you may consider with the others." The instruction above referred to was then read, whereupon the attorney for the prosecution inquired if that was given by request of the defendant. Counsel for defendant thereupon excepted in these words: "I ask for an exception to the remark of counsel." The court then replied that it was in substance the same as requested by defendant, and was found with the instructions offered by him. It is not contended that the instruction was not requested by the defendant. All that is said about that in his brief is this:

"While this instruction was perhaps inherently dangerous, nevertheless the fact that counsel for the state called attention to it in the presence of the jury, asking if it was given at the request of the defendant, we believe did work to his prejudice."

No exception as to that matter was taken to any ruling of the court, nor, indeed, was any action or language of the court objected to. The request for "exception" referred to the "remark of counsel." It was not, apparently, ruled on, nor any exception taken to the failure to rule upon it. An "exception" to serve as foundation for error is taken to a ruling or decision of the court, not to the conduct of attorneys; and hence there would seem to be no "exception," in connection with said matter, to consider. Lipsey v. People, 227 Ill. 364, 81 N. E. 348. But counsel for appellant, having requested the instruction, cannot very well be heard here to complain of the inquiry of counsel as to whether or not it had been requested by

the defendant, made, no doubt, because of surprise by the court's reference to and giving it after the argument was concluded. And we cannot see that any particular prejudice could have resulted from the fact of that inquiry. The statute (Ch. 15, L. 1925), in force at the time of the trial of this cause, provides that the defendant in all criminal cases may be sworn and examined as a witness, if he so elect, but shall not be required to testify in any case; and that the neglect or refusal to testify shall not create any presumption against him, nor shall any reference be made to, nor shall any comment be made upon, such neglect or refusal to testify. The comment upon the refusal to testify or to make a statement, as the instruction reads, was made by defendant's counsel, if, as the record seems to show, they requested the instruction. In view of the statute, the prosecuting attorney might well have inquired as to its source, since it might be anticipated that it would be alleged as error unless coming from the defendant or his counsel. And we think counsel was entitled to the information that the court gave in answer to the inquiry. The situation was created not by the prosecution but by the defense. And we think clearly that what occurred constitutes no ground for reversal, under the circumstances. 17 C. J. 302; Lipsey v. People, supra; State v. Matthews, 119 La. 665, 44 So. 336.

We are not to be understood as passing upon or even considering any question concerning the right or propriety of the court, when giving requested instructions, to mention or indicate the party offering or requesting them. No such question is before us in this case.

For the reasons aforesaid, the judgment will be affirmed.

*Affirmed.*

Blume and Kimball, JJ., concur.