**P & M CATTLE COMPANY, Appellant (Plaintiff below),**

**v.**

**Rusty HOLLER, Appellee (Defendant below).**

**No. 4657.**

Supreme Court of Wyoming.

Feb. 3, 1977.

Michael E. Warren, Sawyer, Sawyer & Warren, Torrington, signed the brief and appeared in oral argument on behalf of appellant.

Morris R. Massey, Brown, Drew, Apostolos, Barton & Massey, Casper, signed the brief and appeared in oral argument on behalf of appellee.

Before GUTHRIE, C. J., and McCLIN- TOCK, RAPER, THOMAS and ROSE, JJ.

RAPER, Justice.

In the district court, the plaintiff-appellant, a partnership, sought and was denied recovery for losses incurred in 1974 under an alleged "oral joint venture agreement" to purchase, lease and sell livestock. Defendant-appellee, an individual, was given judgment for $2,219.40 on a counterclaim. We will affirm.

While the plaintiff sets out the issues as multiple,[1] it appears that the only real issue

---

1. The plaintiff visualizes the issues to be as follows:
 "1. Was the business transaction entered into by the above-named parties a joint venture as claimed by Plaintiff-Appellant or merely a contract for the lease or sale of grass as claimed by Defendant-Appellee?
 "2. If the transaction entered into by the parties was a joint venture, should the Appellee-Defendant be liable for one-half (½) of

is whether the parties to this appeal were parties to a joint venture or partnership agreement to share losses as well as profits from a cattle purchase, feed and sell operation.

In 1971, the defendant was looking for someone to pasture cattle on the defendant's land at $3.00 per head per month. One of two partners in the plaintiff partnership expressed an interest and invited defendant to talk. As a result, the following written agreement was entered into:

"2–23–1971

"Contract—Rusty Holler (60 Bar Ranch) —L. W. Maxfield and Bill Poage

"Rusty to furnish grass for est 1000 yr st and 21 heifers—

"Maxfield & Poage to furnish money for cattle plus trucking & salt—and max of $300.00 per month for labor

"Rusty to take cattle around May 1st and cattle to be sold at a time this fall agreed upon by all parties involved

"Cost of cattle plus freight—salt and labor to be first cost

"Net money from sale of cattle less first cost to be split 50–50 between Rusty (½) and Maxfield and Poage (½) (death loss to be part of first cost)

"/s/ L. W. Maxfield
"/s/ Bill Poage
 "LM
"/s/ Rusty Holler"

The 1971 agreement was orally renewed for the years 1972, 1973 and 1974. Plaintiff and defendant each realized substantial returns in the first three years but in 1974 there was not enough realized from the sale of cattle to pay first costs and a loss resulted. Plaintiff insists that the defendant is bound to pay it $44,500.00 representing one-half of the total cash loss in the sum of $89,000.00. The defendant personally expended first costs for expenses (salt) over

and above the amount received from sale of cattle in the sum of $3,967.76. Through an admitted error of defendant's counsel, along with a misunderstanding by defendant, only one-half of those expenses were claimed by defendant. When the error became apparent at or near the close of evidence, they elected not to amend the defendant's claim first made. The contract clearly states that plaintiff was to "furnish money for * * * salt." [2]

The parties never discussed nor is there any mention in the contract of what would happen if the cattle sold at a loss. Nor was any mention made of reimbursement or credit to the defendant for the value of his services and pasture or grass he contributed, in the event cattle sold at a loss.

A broad overview of the entire record suggests that this case involves only a contract in which plaintiff agreed to put up the money and defendant agreed to put up grazing land and grass, along with services, with a view to profit to both, each to bear their own losses. Before confirming that position, we must examine the law of joint ventures.

In Wyoming, a joint adventure partakes of the nature of a partnership and is governed substantially by the same rules of law, the principal distinction being that a joint adventure usually relates to a single transaction, though it may be continued over a period of years. *Eblen v. Eblen,* 1951, 68 Wyo. 353, 234 P.2d 434. Even though a joint adventure and a partnership are not identical, the relationship of co-adventurers is controlled largely by the law of partnership. *Goldberg v. Miller,* 1939, 54 Wyo. 485, 93 P.2d 947, reh. den., 96 P.2d 570; *Hoge v. George,* 1921, 27 Wyo. 423, 200 P. 96, 18 A.L.R. 469; *Wood v. Western Beef Factory, Inc.,* 10 Cir. 1967, 378 F.2d 96. A concise distinction between joint venture

---

the losses suffered as a result of the transaction?

"3. If, at the end of the trial, Defendant's judicial admissions as to liability stand uncontradicted, should his testimony be conclusive against him?"

**2.** The court's judgment for defendant on the counterclaim in the sum of $2,219.40 represents one-half of $3,967.76 (salt) plus $235.52 for a calf personally owned by defendant and sold by plaintiff for defendant's account.

and partnership is drawn in 1 Cavitch, Business Organizations, § 13.05[2], pp. 677–678:

"It is apparent that the comparatively modern legal concept of joint adventure is intended to identify business ventures which, but for their limited scope and duration, would be partnerships. To date, however, there is no discernible legal difference between the two types of associations. As a result, the courts have held that the joint adventure is subject to the same rules of law which are applied to partnerships, especially when determining the rights of the parties *inter se.*"

The excerpt is excellently footnoted.

■ Since joint adventures, also frequently referred to as joint ventures, are a species of and governed by the law of partnerships, we must go to the Uniform Partnership Act, § 17–195, et seq., W.S.1957, C.1965, adopted by the Wyoming State Legislature in 1917. Section 17–200(1), W.S. 1957, C.1965, defines a partnership as follows: "A partnership is an association of two or more persons to carry on as *co-owners* a business for profit." (Emphasis added.) Section 17–201, W.S.1957, C.1965, lays out the criteria for resolving the question as to whether a partnership obtains:

"In determining whether a partnership exists, these rules shall apply:

"(1) Except as provided by section 16 [§ 17–210] persons who are not partners as to each other are not partners as to third persons;

"(2) Joint tenancy, tenancy in common, tenancy by the entireties, joint property, common property, or part ownership does not of itself establish a partnership, whether such co-owners do or do not share any profits made by the use of the property;

"(3) The sharing of gross returns does not of itself establish a partnership, whether or not the person sharing them have a joint or common right or interest in any property from which the returns are derived;

"(4) The receipt by a person of a share of the profits of a business is prima facie evidence that he is a partner in the business, but no such inference shall be drawn if such profits were received in payment:

"(a) As a *debt* by installments or *otherwise,*

"(b) As *wages* of an employee or *rent* to a landlord,

"(c) As an annuity to a widow or representative of a deceased partner,

"(d) As an interest on a loan, though the amount of payment vary with the profits of the business,

"(e) As the *consideration* for the sale of the good-will of a business or other *property* by installments *or otherwise.*"

(Emphasis added.)

As can be seen from § 17–201, an agreement to share profits is far from decisive that a partnership is intended.

■ As in any contractual relationship, the intent of the parties is controlling. The parties must intend to create the relationship of joint adventure or partnership. *National Supply Co.-Midwest v. Weaver,* 1926, 35 Wyo. 224, 248 P. 353. Superimposed upon the rule of intent, it is frequently held that where there is no express agreement to form a partnership, the question of whether such a relation exists must be gathered from the conduct, surrounding circumstances and the transactions between the parties. *Presutti v. Presutti,* 1973, 270 Md. 193, 310 A.2d 791; *Holman v. Dow,* Tex.Civ.App. 1971, 467 S.W.2d 547; *Freese v. United States,* 10 Cir. 1972, 455 F.2d 1146, cert. den., 409 U.S. 879, 93 S.Ct. 85, 34 L.Ed.2d 134. There is no automatic solution to the question of the existence of a partnership but it turns upon the facts and circumstances of association between the parties, *Bernstein, Bernstein, Wile & Gordon v. Ross,* 1970, 22 Mich.App. 117, 177 N.W.2d 193. No single fact may be stated as the complete and final test of a partnership. *Jenkins v. Brodnax White Truck Company,* Tex.Civ.App.1969, 437 S.W.2d 922. Even a written agreement, designating the parties as partners and providing for a sharing of the profits, is only evidential and not conclusive of the existence of a partnership. *Fenwick v. Unemployment Compensation*

*Commission,* 1945, 133 N.J.L. 295, 44 A.2d 172.

■ In the case before us there was no express agreement to form a partnership. True, there was an agreement but nowhere in that document is there anywhere mentioned the term partnership. Nor is there anywhere mentioned any sharing of losses, which is normally concomitant with a sharing of profits in a partnership.[3] While § 17–201(4) creates an inference, that inference is not conclusive. See the many cases annotated in 6 U.L.A. (Master Edit. 1969 with pocketpart), Uniform Partnership Act, § 7, note 47.

We find in Wyoming two cases which reflect the usual holdings that division of profits has little significance by itself. In *Dunn v. Gilbert,* 1927, 36 Wyo. 249, 254 P. 121, it was held that the use of the expression "fifty-fifty" and an understanding to split the profits do not necessarily mean a joint adventure but such expression must be construed in the light of surrounding facts and circumstances. In *State v. Bemis,* 1926, 34 Wyo. 218, 241, 242 P. 802, 809, the principal witness put up the money to buy and pay shipping costs of a carload of apples. The defendant was to share in the profits by arranging their sale. They sold at a loss and defendant kept all the money. In a prosecution for embezzlement, the defendant claimed a right to retain the funds by reason of a partnership. This court spoke approvingly of the principle that when a business is limited to a single venture, there must be pretty clear evidence of an intent to create a partnership relationship and an understanding for division of profits may only be considered in connection with the whole transaction.

■ Since we cannot look at the face of the instrument here and determine

whether there is a partnership, it is necessary that we examine into the complete relationship between plaintiff and defendant. We can in such a circumstance go outside its four corners to test the claim of a would-be partner and look at what the parties did and how they treated the arrangement between them. The contemporary construction of a contract by acts of the parties is entitled to serious consideration by the court whose duty it becomes to determine its meaning. *First Nat. Bank of Green River v. Ennis,* 1932, 44 Wyo. 497, 14 P.2d 201, reh. den., 45 Wyo. 165, 15 P.2d 1111, West's Wyoming Digest Contracts, ⊛170. The reason for that view rests in the fact that the parties are less liable to have been mistaken as to the meaning of their contract while harmonious relations existed and during that period a practical and real construction would be in effect reflective of their true intentions and not interpretations ventured during the heat of litigation. *Denio Milling Co. v. Malin,* 1917, 25 Wyo. 143, 165 P. 1113.

In the first place, the agreement is not labeled a "partnership agreement" nor is the term "partnership" anywhere mentioned within its terms. The plaintiff was itself a partnership made up of two ranchers well acquainted with that arrangement, one of whom drew the contract. From its inception, then, none of the parties ever identified it as such. The pact was conceived in an atmosphere created by defendant's desire to sell grass. The division of losses was never discussed between the parties until the plaintiff delivered the bad news to the defendant following fall cattle sales in 1974. No partnership federal income tax return in any of the years 1971–74 was prepared and submitted to the Internal Revenue Service of the United States. On

---

**3.** Section 17–212, W.S.1957, C.1965, sets out a rule allowing for contribution to pay losses:
 "The rights and duties of the partners in relation to the partnership shall be determined, *subject to any agreement between them,* by the following rules:
 "(a) Each partner shall be repaid his contributions, whether by way of capital or advances to the partnership property and share

equally in the profits and [surplus] remaining after all liabilities, including those to partners, are satisfied; and must contribute towards the losses, whether of capital or otherwise, sustained by the partnership according to his share in the profits.
 \* \* \* "
(Emphasis added.)

the income tax returns made by the plaintiff during the period in question, the part of profits paid to the defendant was carried as a business expense listed as "contract feeding." The defendant included such payments on his individual income tax return as a sale of "crops," nor were the cattle grazed on his place by the defendant carried on defendant's income tax return livestock inventory. The livestock were carried on plaintiff's partnership income tax returns. On the check given by plaintiff to defendant in 1973, for defendant's share of profits at the end of the season, it was shown as being for "pasture."

 Within the framework of the Uniform Partnership Act, we find rules available to the trial judge to determine that there was no partnership. The division of profits was only a measure—a standard of payment by plaintiff to defendant in discharge of a debt for services and grass under § 17–201(4)(a) or in payment to defendant for wages of an employee in caring for the cattle while on his ranch and rent to him as landlord for his pasture under § 17–201(4)(b) or sale of grass as personal property under § 17–201(4)(e) or through a combination of those lettered subsections for wages and rent or sale of property. We need not determine precisely what it was as long as outside the pale of partnership. We are satisfied that no partnership was intended. The agreement was only an apparatus to pay defendant for his grass and services and we return to its terms after reconnoitering the outer regions.

 Whether or not there is a joint venture is a question of fact and preeminently one for the finder of fact. *Robinson Transportation Company v. Hawkeye-Security Insurance Company,* Wyo.1963, 385 P.2d 203; *Hoge v. George,* supra. The trial judge found for the defendant and we see substantial evidence to support that result. The trial judge could not from the facts before him, nor can we, put together a joint adventure or partnership agreement for the plaintiff.

 Since the issue as to whether or not there was a joint venture or partnership is a question of fact for the trial judge, we have examined the evidence in a light most favorable to the prevailing party, as we must, and have resolved all conflicts in testimony and exhibits for the appellee. *Crockett v. Lowther,* Wyo.1976, 549 P.2d 303; West's Wyoming Digest, Appeal and Error, ⊕931(1), 989. The trial judge's finding was generally for the defendant. In the absence of special findings of fact, this reviewing court must consider that the trial court's judgment carries with it every finding of fact supported by the evidence. *Hendrickson v. Heinze,* Wyo.1975, 541 P.2d 1133; West's Wyoming Digest, Appeal and Error, ⊕846(5). A judgment will be affirmed on any legal ground appearing from the record. *Zitterkopf v. Roussalis,* Wyo. 1976, 546 P.2d 436; West's Wyoming Digest, Appeal and Error, ⊕854(1). We use a lot of publication space repeating these appeal basics but they must be constantly kept in mind in that they have appreciable effect in diminishing an appellant's fortunes in this court.

Affirmed.