# DAVIS ADVISORY SERVICES, INC. *v.* EXECUTIVE STAFFING OF BETHESDA, INC.

[No. 259, September Term, 1971.]

*Decided March 7, 1972.*

The cause was submitted on brief to HAMMOND, C. J., and BARNES, MCWILLIAMS, SINGLEY, SMITH and DIGGES, JJ.

Submitted by *Charles E. Wilson, Jr., McCarthy & Wharton, Hershel Shanks, Allan I. Mendelsohn* and *Glassie, Pewett, Beebe & Shanks* for appellant.

No brief filed on behalf of appellee.

DIGGES, J., delivered the opinion of the Court.

This suit, brought in the Circuit Court for Montgomery County, seeks to recover a $3,750.00 fee charged by an employment agency. Davis Advisory Services, Inc., appellant, paid that sum to the appellee, Executive Staffing of Bethesda, Inc., for locating E. John Wentland to serve as its accountant and treasurer. After Davis concluded the presentation of its case, Judge Pugh, sitting without a jury, granted appellee's motion to dismiss pursuant to Maryland Rule 535. In order for the trial judge to have correctly granted this motion it would have been necessary for him to consider appellant's evidence, including all logical and reasonable inferences which can be drawn therefrom, in a light most favorable to Davis and then properly determine that a prima facie case had not been established. *Hadjis v. Anderson,* 260 Md. 30, 35, 271 A. 2d 350 (1970); *Isen v. Phoenix Assurance Co.,* 259 Md. 564, 571, 270 A. 2d 476 (1970); *Shoreham v. Randolph Hills,* 248 Md. 267, 278, 235 A. 2d 735 (1967); *Price v. Levin,* 248 Md. 158, 235 A. 2d 547 (1967). We disagree with the dismissal at this stage of the proceedings because we think appellant made out a prima facie case. From our review of the record, keeping in mind the test just enunciated, the following fact pattern emerges.

Mortgage Investors of Washington was organized as a Maryland mutual fund for the purpose of investing in real estate. In order for it to qualify for an exemption, under §§ 856-58 of the Federal Internal Revenue Code (26 U.S.C.A. §§ 856-58, 1954), from paying an income tax, it was necessary for the fund to remain entirely passive. Accordingly, Davis was incorporated to manage and advise the mutual fund in all of its activities. Appellant's primary responsibility throughout the formalization period of Mortgage Investors was to assist it in qualifying for the Internal Revenue Code exemption and also aid in obtaining approval from the Securities and Exchange Commission for a public offering of its shares. During this pre-offering period, Davis needed someone

with experience to serve as its internal accountant, prepare and sign registration statements for the S.E.C. and see that there was compliance with the requirements of the I.R.C. Utilizing the services of Executive Staffing, an employment agency, Davis found and subsequently hired E. John Wentland as its treasurer at a $25,000 yearly salary. Prior to being employed, Wentland was twice interviewed by appellant. He also furnished a resume containing in part the following information about his professional background: he had worked for Ernst & Ernst and Arthur Anderson & Co., two nationally known accounting firms; had spent four years with the Internal Revenue Service; and had served as comptroller of Miami Window Corporation, "a multi-corporate set up" of "21 corporations" for which he prepared the reports it filed with S.E.C. Shortly after deciding to hire Wentland, Davis received a statement from Executive Staffing showing that a $3,750.00 fee was due on September 30, 1969. This bill was accompanied by a "Candidate Stability Guarantee" which in pertinent part provided:

"The following CANDIDATE STABILITY GUARANTEE is offered to those employers whose policy it is to pay fees in the interest of recruiting qualified and reliable personnel.

1. In the event a candidate voluntarily resigns or is discharged for dishonesty, excessive drinking, excessive tardiness, or excessive absence (for reasons other than illness or emergency), Executive Staffing guarantees:

. . .

Refund of the fee pro-rated over 90 days, should such a resignation or discharge-for-cause occur within 90 days of the starting date of a candidate whose starting salary is $9,000 per year or more.

2. Executive Staffing also guarantees the employer a refund of the fee IN FULL

> in the event a candidate resigns or is
> discharged for ANY reason within two
> weeks of the starting date."

After receiving this statement with the enclosed guarantee, the president of Davis, Charles D'Arco, wrote appellee asking that the payment date be extended. The letter stated that appellant was "in effect an empty shell with no responsibilities and no income until such time as another organization, Mortgage Investors of Washington, comes out onto the market." The correspondence went on to advise that "until such time as [Davis] is operating, we will not have full opportunity to evaluate Mr. Wentland's talents. Therefore, we would like to defer the due date of this obligation to December 1 or until such time as [Mortgage Investors] comes out and have the full benefit of your Candidates Stability Guarantee available at that time." Kenneth Richardson, the president of Executive Staffing, in response to this request notified Mr. D'Arco by letter that: "we are willing to wait until December 1, 1969, the date suggested in your letter." However, Mortgage Investors was unable to put its shares on the market by December 1, so in mid-December Mr. D'Arco telephoned appellee and asked Mr. Richardson for a further postponement.[1] During that conversation it was agreed that the effective date of Wentland's employment, for purposes of the Stability Guarantee, would be delayed until January 1, 1970; but the finder's fee would be paid immediately. Davis confirmed this arrangement by letter on December 16, 1969, in which a $3,750.00 check was enclosed.

All seemed finally settled but the quietude was not long lasting, for in late December, Davis learned for the first time, through its attorney, that Wentland had been investigated by the S.E.C. for his conduct while associated with Miami Window Corporation.[2] He was con-

---

1. Following S.E.C. approval the shares were finally marketed on March 5, 1970.
2. The Commission in an administrative hearing found Wentland primarily responsible for filing with the S.E.C. false and mislead-

sequently indicted for "wilfully and knowingly causing a false registration statement to be filed with the Securities and Exchange Commission in violation of 15 U.S.C. § 77x (1958)." *United States v. Wentland,* 234 F. Supp. 936, 937 (D. D. C. 1964). In light of this startling new information, Davis decided that Wentland was unqualified to be its treasurer since his primary duties would have been to file reports with the S.E.C. and obtain approval for Mortgage Investors' initial offering of shares. Appellant therefore gave the accountant the rather limited choice of resigning immediately or of being fired. Wentland accepted the former option and resigned around the end of December 1969 or during the first few days of January 1970.

Davis contends that it is entitled to full reimbursement of the $3,750.00 it paid appellee, since Wentland was dismissed within two weeks of the agreed starting date of January 1, 1970. Alternatively, appellant argues that it should at least be permitted a prorated return of its money, dating from December 1, 1969, under the provision allowing discharge for cause (in this case dishonesty) within 90 days. The trial judge concluded that the motion to dismiss under Rule 535 should be granted because in his opinion Wentland did not resign but was fired. Even assuming this is true, which appellants are willing to concede, that fact is not determinative of the outcome of this suit. We think that Davis presented sufficient testimony which established, prima facie, that January 1, 1970 was agreed upon as the commencing date for purposes of the guarantee which authorized "a refund of the fee IN FULL in the event a candidate resigns or is discharged for ANY reason within two weeks of the starting date." Likewise, there is also testimony which, if believed, indicates that Wentland, by not divulging to Davis any information concerning his prior difficulties with the S.E.C., exhibited "dishonesty." Since

---

ing reports in connection with Miami Window Corporation. See *In the Matter of Miami Window Corporation,* 41 S.E.C. 1968 (1962).

an integral part of the accountant's job involved important dealings with the Commission, this lack of candor could justify his dismissal so as to activate the Stability Guarantee and permit a "[r]efund of the fee pro-rated over 90 days," computed from December 1, 1969. We conclude this evidence establishes a prima facie case that the appellant is entitled to a refund, either partially or in full, of the employment fee. The trial judge should have denied the motion to dismiss and required appellee to proceed with its defense.

> *Judgment reversed and case remanded for further proceedings.*
>
> *Costs to be paid by the appellee.*