# PRESUTTI *v.* PRESUTTI

[No. 65, September Term, 1973.]

*Decided November 6, 1973.*

The cause was argued before MURPHY, C. J., and BARNES, McWILLIAMS, SINGLEY, SMITH, DIGGES and LEVINE, JJ.

*William E. Brooke*, with whom were *Woodrow A. Shriver* and *Shriver & Brooke* on the brief, for appellant.

*Charles A. Dukes, Jr.*, with whom were *Dukes, Troese, Mann & Wilson* on the brief, for appellee.

LEVINE, J., delivered the opinion of the Court.

This appeal is from a dismissal of a suit in equity for an accounting brought by appellant, Claude C. Presutti (Claude), against appellee, Ralph W. Presutti (Ralph), in the Circuit Court for Prince George's County. Claude brought the action against his son, Ralph, on the grounds that they had entered into an oral agreement to form a partnership for the operation of a service station; and that Ralph had thereafter refused to render an accounting of partnership assets and profits. At the conclusion of the presentation of Claude's evidence, the chancellor granted Ralph's motion to dismiss the bill of complaint. We reverse that decision.

According to the testimony offered by Claude, he and Ralph had a discussion in April 1969, in which the latter said, " 'Dad, if you put up the money, . . . we'll go partnership in the station . . .' " Claude's response was " 'Okay.' " Ralph explained to him that the oil company whose station they were to operate "frowns on partnership stations." For that reason, "he couldn't put my name on the station." Claude acquiesced in this arrangement, stating, "he

was my son and I trusted him." Hence, he never signed any "dealer" agreements and leases; or any other "partnership" documents such as tax returns. Claude, nevertheless, insists that he "was supposed to be a partner." He also testified that they agreed to share the losses.

Claude then withdrew from his bank account the sum of $8,000, with which he and Ralph opened a joint checking account on April 26, 1969, under the trade name of the service station. From time to time, Claude drew checks upon that account for payment of merchandise at the station. After operation of the business commenced, Ralph refused to sign a partnership contract or formalize their agreement in any other manner. In July 1969, $2,000 was returned to Claude, which he states was an unused portion of his capital investment. Ralph, on the other hand, had advanced no money for the formation of the partnership.

In September 1969, Claude began to work at the service station, and continued to do so for one year. He states that according to their agreement, they were to each draw a salary for services actually performed, for which he received $125 a week. He also says that occasionally he received additional sums which he claims were on account of parnership profits, as well as free gas, tires and automobile accessories. When Ralph would not sign the written partnership agreement, he stopped working at the station. During his one-year tenure, he managed the station whenever Ralph was absent from the premises, and participated in such policy decisions as whether they should purchase a truck and distribute trading stamps.

Despite the termination of his services, Claude continued to receive payments of money and car repairs from the station until January 1972; he obtained gas until July 1972. When Ralph finally refused to affirm the existence of the partnership he filed suit the following month, August. During the preceding three years, Claude had received approximately $17,000 as salary, for his services, as well as the partial return of his capital investment and distribution of profits.

Also testifying as a witness for Claude was his wife — and

Ralph's mother — Rose Presutti (Rose). She testified that she overheard the conversation between Claude and Ralph in April 1969, in which Ralph "told Dad that if Dad put up the money, the $8,000, that they would form a partnership together." She also testified that "they were supposed to divide the losses. . . ." Furthermore, she said, "they were supposed to go 50-50 beings they were partners." She also corroborated the testimony regarding Ralph's ostensible reason for not including Claude's name on the "dealer" papers. Two other witnesses produced by Claude confirmed his station activities during the year that he worked there.

As we have indicated, at the conclusion of the evidence offered by Claude, the chancellor granted Ralph's motion to dismiss the bill of complaint. In so ruling, the chancellor does not appear to have concluded that Claude failed to establish the formation of a partnership; but, judging from the following statements, he was apparently of the view that Claude did not establish what his share of the profits would be:

> ". . . So, in order to determine whether [Claude] is entitled to an accounting you first have to establish, one, that there was a partnership; two, that he is entitled to a certain something as a result of the partnership. What is this certain something? Is it 50 per cent, is it 25 per cent, or is it 30 per cent? *I think the record is silent as to what portion of the partnership [Claude] would be entitled to.*
>
> * * *
>
> " . . . So, even if I were to conclude that there was an agreement of partnership I would still not have any basis upon which to direct an accounting, because I think the mere showing of a partnership in and of itself would not entitle one to an accounting. . . . So, it isn't whether or not there is a partnership that's so compelling here, it's whether or not he is entitled to an accounting, and in order to entitle him to an accounting it would seem that he has to show that *he is entitled to at least some*

*portion of the assets, profits, or is responsible for
some portion of the loss. . . ."* (emphasis added).

As we stated at the outset, we think the chancellor erred in reaching his decision.

At the cost of belaboring this opinion, we have made extensive reference to the testimony because we deem it necessary to stress the application of Maryland Rule 535, pursuant to which the motion to dismiss was granted. We have consistently held that in order for a trial judge to properly grant such a motion, he must consider the evidence, including all logical and reasonable inferences which can be drawn therefrom, in a light most favorable to the plaintiff, *Davis Adv. Serv. v. Exec. Staffing,* 264 Md. 644, 645, 288 A. 2d 148 (1972); *Hadjis v. Anderson,* 260 Md. 30, 35, 271 A. 2d 350 (1970); *Isen v. Phoenix Assurance Co.,* 259 Md. 564, 571, 270 A. 2d 476 (1970); *Shoreham v. Randolph Hills,* 248 Md. 267, 278, 235 A. 2d 735 (1967).

The chancellor prefaced his ruling with a passing reference to this rule, but then, in our view, fell into error by proceeding to weigh the evidence. This statement, referring to Rose's testimony, is illustrative:

> "... She says that they were supposed to go 50-50; that's just the way she said it. She didn't say their agreement was 50-50, but she said they were supposed to go 50-50. . . ."

(1)

Apparently unpersuaded by the chancellor's ruling quoted earlier, Ralph continues to press the argument advanced below that no partnership was established, but merely "an agreement to form a partnership." We disagree.

Although Claude relies upon an oral agreement to establish the partnership, a written agreement is not necessary where the acts and circumstances of the parties indicate an intention to create a partnership, *M. Lit, Inc. v. Berger,* 225 Md. 241, 248, 170 A. 2d 303 (1961). Similarly, where there is no express agreement, whether or not a partnership exists is to be gathered from the intention of the

parties revealed by their conduct and the circumstances surrounding their relationship and the transactions between them, *Miller v. Salabes*, 225 Md. 53, 55-56, 169 A. 2d 671 (1961); *Vlamis v. De Weese*, 216 Md. 384, 389, 140 A. 2d 665 (1958).

As we have observed, the chancellor did not rest his decision on a failure by Claude to establish a partnership, but held instead that he failed to show what amount he was entitled to receive. Contrary to the argument advanced by Ralph, however, we are of the view that Claude did establish prima facie that a partnership existed.

When the evidence is viewed in light of the test applicable to motions to dismiss, recited earlier, Claude established that he and Ralph entered into an express partnership agreement in April 1969, whereby they were to divide the profits and losses equally, in furtherance of which Claude invested $8,000. In the posture which this case reaches us, such subsequent developments as Claude's failure to sign a partnership tax return and the payment to him of a salary for his services go merely to the weight of the evidence, and cannot sustain the motion to dismiss.

Our view is reinforced by Maryland Code (1957, 1970 Repl. Vol.) Art. 73A, § 7, which provides in relevant part:

> "In determining whether a partnership exists, these rules shall apply:
>
> * * *
>
> "(4) The receipt by a person of a share of the profits of a business is prima facie evidence that he is a partner in the business. . . ."

It is true, however, as we noted in *Miller v. Salabes, supra,* that this is not conclusive on the question of the existence of a partnership, and may be rebutted by a showing of fact to the contrary, 225 Md. at 56. This view is in accord with the prevailing weight of authority interpreting the Uniform Partnership Act, *Uniform Partnership Act* (U.L.A.) § 7, n. 47. In the face of the motion to dismiss, the evidence that Claude received occasional distributions of profits stands

uncontradicted, and should not have been disregarded by the chancellor.

We think therefore that the evidence offered by Claude was sufficient to establish prima facie the existence of a partnership with Ralph.

(2)

The thrust of the chancellor's decision, however, is that, even assuming the existence of a partnership, that alone does not entitle Claude to an accounting. The chancellor reasons that since it was not established how much Claude was entitled to receive, whoever attempted to state the account would lack any basis for making that determination.

The first defect in that reasoning is that it ignores the testimony by Rose that they were to divide the profits "50-50." We think the chancellor placed undue emphasis on Rose's expression that "they were to supposed to go 50-50." Much of what we have said regarding the chancellor's role in deciding a motion to dismiss is apposite here. By applying the test recited earlier, it may be inferred from her testimony that they agreed to divide the profits equally, but that Ralph refused to honor that obligation.

Furthermore, even if that testimony is disregarded, there remains the suggestion that Claude might have been entitled to at least 25 or 30 per cent of the profits. Although this might weigh heavily in the actual accounting process, it would not alone preclude an accounting.

In this regard, § 18 of Art. 73A provides:

> "The rights and duties of the partners in relation to the partnership shall be determined, *subject to any agreement between them*, by the following rules:
>
> "(a) Each partner shall be repaid his contributions, whether by way of capital or advances to the partnership property and *share equally in the profits* and surplus remaining after all liabilities, including those to partners, are satisfied; and *must contribute towards the losses,*

whether of capital or otherwise, sustained by the partnership *according to his share in the profits.*" (emphasis added).

Although the parties may agree to a different distribution of profits, *cf. Anderson v. Anderson*, 215 Md. 483, 489, 138 A. 2d 880 (1958), under the statute quoted above, a partner is entitled to an equal share of the profits, absent a specific agreement to the contrary, *Uniform Partnership Act* (U.L.A.) § 18, nn. 9, 10.

We think the chancellor took an unduly restrictive view in refusing to allow an accounting merely because Claude failed to establish — to the chancellor's satisfaction — the precise percentage of the profits to which he was entitled. Section 43 of Art. 73A provides that:

> "The right to an account of his interest shall accrue to any partner, or his legal representative, as against the winding up partners or the surviving partners or the person or partnership continuing the business, at the date of dissolution, in the absence of any agreement to the contrary."

It was established here that the partnership had been terminated well before the trial of this case. This statutory provision makes it clear that in Maryland, there is a right to an accounting upon the dissolution or termination of a partnership, *Metaxa v. Coutros*, 211 Md. 499, 502, 128 A. 2d 273 (1957); *Mervis v. Duke*, 175 Md. 300, 306, 2 A. 2d 11 (1938). In *Malinow v. Eberly*, 322 F. Supp. 594 (D. Md. 1971), the court said:

> " . . . The essential elements of the cause of action [for an accounting upon the termination of a partnership] are (a) the existence of a partnership, (b) the transaction of business by the partnership producing profits [or losses] to be accounted for, (c) the termination or dissolution of the partnership, (d) a demand for an accounting, and (e) a failure or refusal by the partner with the books, records, profits, or other assets of the partnership in his

possession to account to the other partner or partners (citations omitted)." 322 F. Supp. at 600.

Those requirements have been met here.

For these reasons, the chancellor erred in dismissing the suit; appellant established a prima facie case under his bill of complaint, and appellee should have been required to go forward with his defense.

> *Order reversed; case remanded for further proceedings not inconsistent with this opinion; costs to be paid by appellee.*